UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOSEPH P.,[1]

        Plaintiff,

   v.

NANCY A. BERRYHILL,

        Defendant.

Case No. 18-cv-03193-TSH

**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 14, 15

## I.  INTRODUCTION

Plaintiff Joseph P. brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of Defendant Nancy A. Berryhill, the Acting Commissioner of Social Security, denying his claim for disability benefits.  Pending before the Court are the parties' cross-motions for summary judgment.  ECF Nos. 14 (Pl.'s Mot.), 15 (Def.'s Mot.).  Pursuant to Civil Local Rule 16-5, the motions have been submitted on the papers without oral argument.  Having reviewed the parties' positions, the Administrative Record ("AR"), and relevant legal authority, the Court hereby **GRANTS IN PART** Plaintiff's motion and **DENIES** Defendant's cross-motion for the following reasons.

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

## II.    BACKGROUND

**A.    Age, Education and Work Experience**

Plaintiff is 47 years old.  AR 39.  The highest level of schooling he completed is ninth grade.  AR 40.  He does not have a GED.  *Id*.  He last worked as a meat department employee at a supermarket in August 2012, where he worked for about twenty years.  AR 41.

**B.    Medical Evidence**

### 1.    Treatment by Dr. Said

In April 2008 and February 2009 Plaintiff was seen by Bassem Said, M.D., for his sleep problems and temporomandibular jaw ("TMJ") syndrome.  AR 408-10.

### 2.    Treatment at Muir Orthopedics

Plaintiff was treated for back pain with decreased range of motion and strength by Muir Orthopedics from April to July 2011.  AR 270-314.

### 3.    Opinions from Dr. Alpert

Russell Alpert, M.D., was Plaintiff's primary care physician and saw him on at least 10 occasions between February 6, 2012 and January 16, 2013.  AR 342-368.  On February 6, 2012, he ordered Roserem and Xanax to treat Plaintiff's insomnia and anxiety, respectively.  AR 352.  He also gave Plaintiff a note to be off work until Plaintiff could be accommodated for local work and diagnosed him with anxiety.  AR 353.

On July 18, 2012, Plaintiff reported that he had been out of work since the beginning of the week.  AR 342.  He was having a recurrence of prostatitis and needed a Xanax refill "that he uses sparingly."  *Id*.  Dr. Alpert diagnosed him with chronic prostatitis and anxiety.  AR 343.  Dr. Alpert saw him again on August 3, 2012, noting that Plaintiff missed an entire week of work due to anxiety.  AR 345.  He again diagnosed him with anxiety.  AR 346.

Dr. Alpert saw Plaintiff again 11 days later and described him as appearing anxious, unshaven and perseverating over his physical ailments.  AR 350.  At this visit, Dr. Alpert referred him to a psychiatrist.  AR 351.  He again diagnosed him with anxiety and chronic prostatitis and now added GERD.  *Id.*  On September 5, 2012, Plaintiff was seen again by Dr. Alpert, who diagnosed him with anxiety and agoraphobia.  AR 348.  On September 14, 2012 Plaintiff saw Dr.

Alpert, who notes that he was "very anxious," and "feeling depressed." AR 354. Dr. Alpert noted that Plaintiff "went to the Sutter ER for anxiety." *Id*. Dr. Alpert diagnosed him with acute depression and anxiety. AR 356.

On September 17, 2012, Plaintiff was seen by Dr. Alpert again who noted that Plaintiff told him he had not slept for two days. AR 357. Despite the latter, he noted that Plaintiff presented as alert, oriented and not in acute distress. AR 358. Dr. Alpert again diagnosed him with anxiety. AR 359. Dr. Alpert saw Plaintiff again on October 15, 2012, following his hospitalization at John Muir (discussed below). AR 363. Dr. Alpert described him as only "[s]lowly improving" since his hospitalization and being "obsessed" with potential side effects from the medications he was prescribed. *Id*. Plaintiff stated he was getting sleep and had "no complaints." *Id.* Dr. Palmer found Plaintiff was alert, oriented, and in no acute distress, had no focal deficits, was mildly anxious, had normal thought processes, a normal mood, and a slightly flat affect. AR 364. He again diagnosed him with acute depression and anxiety. *Id*. Dr. Alpert saw Plaintiff on December 3, 2012 and his psychiatric evaluation was that the Plaintiff had "anxious slight psychomotor agitation, normal thought process." AR 368. Dr. Palmer also noted that the dental device was not helping his chronic TMJ, likely exacerbated by anxiety, and that he had been unable to tolerate the CPAP for his sleep apnea. AR 366-68. Plaintiff reported slight improvement on Zoloft. AR 366. Dr. Alpert diagnosed him with acute depression, TMJ, chronic prostatitis and anxiety. AR 368.

When Dr. Alpert saw him the following year on January 16, 2013, he wrote that Plaintiff was still suffering from severe anxiety, insomnia and required a follow up with a psychiatrist. AR 360. At this visit he also ordered an Ativan refill for Plaintiff, AR 361, and again diagnosed him with anxiety and chronic prostatitis. AR 362

### 4.     Opinions from Dr. Achamallah

Plaintiff was referred to the Partial Hospital Program (PHP) by his primary care physician, Dr. Alpert. AR 322. Nagui Achamallah, M.D., performed a psychiatric evaluation of Plaintiff at the John Muir Behavioral Center on September 20, 2012 and admitted him to the PHP on an outpatient basis. AR 322-23. The hospitalization was a result of Plaintiff's reporting increased

anxiety, panic attacks, low energy and racing thoughts that were not responding to treatment.  AR

322.  Plaintiff reported that he had recently started on Zoloft.  *Id.*  He reported he was not suicidal.

*Id.*  He also reported a long history of depression and anxiety.  *Id.*  He stated that he had

medication prescribed for anxiety and depression "but he never took them."  *Id.*  He reported he

was currently on disability for depression and anxiety.  AR 323.  Dr. Achamallah noted that

Plaintiff was cooperative during the interview; his thought process had some tangentiality; his

thought content was goal-directed; he had no hallucinations or delusions; his insight was impaired;

his judgment was fair; he was well-oriented to time, place, person, and purpose; his immediate

recall, short and long-term memory, were intact; his attention was slightly impaired.  AR 323.

### 5.    Evaluation by Nurse Practitioner Sarah Berg

Sarah Berg, N.P., conducted Plaintiff's intake examination at the John Muir Behavioral

Center for PHP.  AR 325.  Plaintiff reported a long history of general anxiety and stated it had

increased over the past two months.  *Id.*  He informed Berg that his current medications were

Xanax, Zantac and Naprosyn as needed.  *Id.*  He stated his hearing was good, with no hearing loss

or ringing.  AR 326.  Further, he reported difficulty with chronic low back pain but denied any

acute issue regarding his back pain.  AR 327.  On examination, Berg noted Plaintiff was well-

appearing; in no acute distress; alert and oriented; his mood was depressed, he appeared anxious,

and he had a slightly flattened affect; his neck was supple with good range of motion, no

tenderness, masses, or stiffness; he had no edema, discoloration, clubbing, or variscosities in his

extremities; his peripheral pulses were equal and strong bilaterally; he had full range of motion of

all upper and lower extremities, neck, and back, no point tenderness or pain with movement, no

crepitation or deformities, no costovertebral angle tenderness, and no evidence of scoliosis; he had

normal facial sensation and normal jaw clench; his motor strength was normal and equal

bilaterally; his gait was within normal limits; and his Romberg test was negative.  AR 327–29.

Plaintiff reported TMJ with tinnitus for which he took medication as needed, but he had not

required it recently.  AR 330.  Berg noted in her intake examination that Plaintiff appeared

medically stable.  *Id.*

### 6. Opinions from Dr. Neril

Plaintiff was admitted into a full hospitalization at the John Muir Behavioral Health Center from September 29, 2012 through October 11, 2012. AR 331. Morton Neril, M.D., examined Plaintiff on September 29, 2012. AR 333–34. On examination, Dr. Neril found Plaintiff's mood was stable, not super irritable; he was friendly, communicative, and intelligent as based on the level of conversation; his recent and past memory was intact; he was oriented; he had no shifting levels of consciousness; and he denied suicidal or homicidal ideations. AR 333–34. Plaintiff reported that Dr. Albert prescribed Xanax, which stopped his panic attacks. AR 333. Dr. Neril diagnosed Plaintiff with anxiety and depression. AR 334. Upon discharge, Dr. Neril stated that Plaintiff's condition had "[i]mproved." AR 332. He stated that Plaintiff's prognosis was guarded and that no follow-up was needed for an acute medical issues. *Id.*

### 7. Opinions from Dr. Adeyanju

On September 29, 2012, Johnson Adeyanju, M.D., also examined Plaintiff as part of his hospitalization at John Muir. AR 335–37. Dr. Adeyanju found Plaintiff was alert, oriented, and in no apparent distress; he had a normal gait, no clubbing, cyanosis, or edema in his extremities; his motor strength was normal and equal bilaterally; his sensation was intact; his finger-to-nose and heel-shin were within normal limits; his reflexes were equal bilaterally; and he had no Babinski's. AR 336-37.

### 8. Opinions from Dr. Palmer

Plaintiff began receiving psychiatric care from Rolf Palmer, M.D., on October 18, 2012. AR 421. Dr. Palmer noted on November 1, 2012 that Plaintiff had to take a Xanax to come to the appointment and that he was medication compliant. AR 420. On December 20, 2012, Dr. Palmer noted that he was improved from his baseline after hospitalization. *Id.*

On March 29, 2013, Dr. Palmer determined that Plaintiff had not improved and confronted him on the signs of his severe anxiety such as rapid speech and reclusiveness. AR 419. He also noted that Plaintiff needed his mother to drive him because of his anxiety. *Id.* Dr. Palmer found Plaintiff unable to work or handle the stress of jury duty. *Id.*

On June 8, 2013, Dr. Palmer described Plaintiff's baseline as "always anxious, alarmed

with racing thoughts" and fatigue.  AR 418.  Although Plaintiff was resistant to medication changes, he was found to be compliant.  *Id.*  On October 18, 2013 Dr. Palmer noted that Plaintiff's physical complaints appeared to make him unable to work, but that he was "somewhat obsessive." AR 417.  On March 21, 2014, Dr. Palmer increased his medication.  AR 416.  During that same visit, Plaintiff reported that he got his job back and then resigned.  *Id.*  He stated that he could not work due to anxiety but mostly due to physical illness.  *Id.*  On August 8, 2014 Dr. Palmer encouraged Plaintiff to apply for Social Security disability benefits based on his physical complaints (sleep apnea, obesity, chronic proctitis, and lower back pain) as well as his mental health issues (obsessiveness, vegetativeness).  *Id.*  On August 8, 2014, Dr. Palmer described Plaintiff as "non-compliant," well groomed, and mildly depressed.  *Id.*  On December 12, 2014 Dr. Palmer described Plaintiff as agoraphobic and still needing his mother to drive him.  *Id.*

On May 1, 2015, Dr. Palmer saw Plaintiff again and found him to be at his baseline of low motivation, anxiety, depressive mood and poor concentration, and that he did not seem capable of change and that his prognosis was very poor.  AR 429.  He also noted poor grooming and stated that Plaintiff was agoraphobic.  *Id.*

In September 2015 Dr. Palmer described Plaintiff as too anxious to drive, not leaving his house for weeks because of agoraphobia, perseverating on his physical ailments, and poorly shaven.  AR 444.  On January 26, 2016 Dr. Palmer described Plaintiff as being unchanged from September, although his anxiety was "fairly well controlled," but his sleep condition was continuing to affect his motivation.  *Id.*  He was also described as having "prominent avoidant personality characteristics."  *Id.*  On June 3, 2016 Dr. Palmer found him to continue to be at his baseline, unable to follow through on medical suggestions and with a continued diagnosis of panic disorder with agoraphobia.  AR 445.  On October 21, 2016, Dr. Palmer continued to find Plaintiff to have self-defeating behaviors, including refusing a sleep study.  *Id.*  At a visit on February 10, 2017, Dr. Palmer described Plaintiff as remaining "impaired" and never leaving his house because of his fatigue and agoraphobia.  *Id.*  Dr. Palmer at this point questioned Plaintiff's compliance but also noted that his resistance to change has been a prominent feature of his condition for many years.  *Id.*

**9.      Opinion from Dr. Yee**

On March 8, 2013 Plaintiff was seen by Amber Yee, M.D., at the John Muir Medical Group.  AR 369-372.  In general, Dr. Yee noted that Plaintiff was not in acute distress and was cooperative, though she did note that his mood and affect were anxious.  AR 371.  Specifically, she stated that he seemed "very anxious" and should follow up with a psychiatrist.  *Id.*  Dr. Yee also suggested that the first priority was addressing Plaintiff's sleep apnea "as this is the most likely cause of his fatigue.  Once treated adequately, if still fatigued we should look at other causes."  *Id.*  She sent him for baseline lab work to check for anemia and thyroid disorder.  *Id.*

**10.      Opinion from Dr. Aguirre**

On May 1, 2013 Plaintiff was seen by Juana Gonzalez Aguirre, M.D., for a multitude of physical complaints, including feeling persistently fatigued, although he advised that his anxiety and depression had "improved a lot."  AR 373.  She diagnosed him with anxiety and depression but stated that they were managed by a psychiatrist and seemed well controlled.  AR 375.

**11.      Opinion from Dr. Newman**

On January 16, 2015 Plaintiff was sent by the Social Security Administration ("SSA") to an internal medicine evaluation with Richard Newman, M.D., who performed a physical evaluation and diagnosed Plaintiff with anxiety, sleep apnea and lower back pain.  AR 425-27.  On examination, Plaintiff experienced pain with range of motion and straight leg testing.  AR 426-27.  Dr. Newman reviewed SSA Forms 3368 and 3373-BK and records from the John Muir Medical Group dated May 1, 2013.  AR 425.  Plaintiff reported to Dr. Newman that he was diagnosed with anxiety and depression when he was 19 years old.  *Id*.  He complained of lower back pain since 1992 from a work injury.  *Id*.  He reported that he cooked, did homework, dishes, and laundry, bought groceries, drove, watched television, listened to music, and read.  *Id*.  His current medications were Zoloft, Seroquel, Xanax or Ativan, over-the-counter Zantac, and over-the-counter Naproxen.  *Id*.

Dr. Newman's examination showed normal lumbar lordsosis and normal thoracic kyphosis; no evidence of scoliosis, nor cyanosis, clubbing, or edema; normal muscle bulk and tone; coordination, station, and gait within normal limits; full ranges of motion in his cervical

spine, shoulder joints, elbow joints, wrist joints, hip joints, knee joints, ankle joints, and finger, thumb and hand joints. AR 426. Plaintiff did not use an assistive device. *Id*. His straight leg raise testing was normal but with complaints of pain. AR 427. Dr. Newman found no paravertebral muscle spasm, tenderness, crepitus, effusion, deformities, or tender points; 4/5 motor strength; and senses within normal limits. *Id*. He found Plaintiff capable of sitting for less than two hours out of an eight-hour work day, standing and walking for less than two hours, lifting and carrying up to twenty-five pounds, and to be restricted from bending, stooping, crouching and squatting, and not requiring an assistive device. *Id*.

### 12. Opinions from Dr. Martin

On June 30, 2015 Plaintiff was sent at the request of the Department of Social Services for a consultative examination with Paul Martin, Ph.D. AR 436. Dr. Martin did not review any medical records. *Id*. Dr. Martin reviewed SSA form 3368 in connection with his examination. *Id*. Dr. Martin noted that Plaintiff arrived on time for the appointment and was a reliable historian. *Id*. Plaintiff reported severe difficulty with insomnia and stated that it caused significant disruption throughout the day. *Id*. Plaintiff reported chronic pain issues, having generalized anxiety and panic attacks. *Id*. He reported that he tended to stay at home, which helped reduce the frequency of his panic attacks. *Id*. Plaintiff reported he essentially had no social life. AR 437. He stated he had low energy, poor motivation, social withdrawal, sleep disturbance, poor concentration, poor memory, anhedonia, occasional crying spells, and never felt happy. AR 436. Plaintiff denied suicidal ideations. AR 437. Plaintiff reported low back pain and rated it between a five and eight out of 10. *Id*. He said he had pain due to TMJ since he was 18 years old and rated his pain between a five and a six out of ten. *Id*. Plaintiff reported that he used outpatient mental health services in the past but was not using any at the time of the examination. *Id*. He denied having a learning disability and being placed in special education classes. *Id*. He said he was unable to prepare simple meals, he was able to perform light household chores, make change at a store, take public transportation, drive a car, and had a valid driver's license. AR 438. Plaintiff stated that he spent most of his day resting and taking care of basic needs. *Id*.

Dr. Martin's mental status evaluation showed Plaintiff was oriented to person, place, time,

and situation; had 100% intelligible language; denied suicidal or homicidal ideations; had fair attention (5 digits forward/4 digits in reverse); had an adequate fund of knowledge (named the last five presidents); had adequate memory (recalled 3 of 3 words after brief delay); performed simple calculation; had adequate insight/judgment; had organized, coherent, linear, and goal-directed thought processes; and had normal thought content. *Id*. Dr. Martin's mental status evaluation showed depressed mood and affect and an ability to answer simple questions such as that oranges and bananas are both fruit. *Id*. Intellectual testing by Dr. Martin revealed a full-scale IQ of 71 and borderline scores in perceptual reasoning, working memory and processing speed. AR 439. Dr. Martin found his attention, concentration and processing speed to all be in the borderline range. *Id*. Plaintiff's memory scores were likewise in the borderline and low average range. AR 440. Dr. Martin interpreted this to mean he would have difficulty with new learning and memory and that his attention and concentration could have been worsened because of his anxiety. *Id*. Dr. Martin assessed a Global Assessment Functioning ("GAF") score of 60.[2] AR 441.

Dr. Martin found Plaintiff's prognosis was guarded, with no significant changes expected within the next 12 months. *Id*. Dr. Martin diagnosed major depressive disorder, anxiety disorder, and sleep disorder based on this one-time evaluation. *Id*. He opined that Plaintiff would have moderate limitations in the ability to complete a normal workday or workweek and his ability to deal with the usual stresses in a competitive work environment, as well as mild limitations in his ability to maintaining regular attendance and performing activities on a consistent basis without special supervision. *Id*. Dr. Martin opined Plaintiff had mild limitations in performing detailed and complex tasks versus simple and repetitive tasks; no significant limitations accepting instructions from supervisors; and no significant limitations interacting with coworkers and the public. *Id*. Dr. Martin found Plaintiff can manage funds independently. AR 442.

---

[2] A GAF of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or coworkers). Diagnostic and Statistical Manual of Mental Disorders IV (DSM-IV) 31-34 (4th ed. 2000); *Denby v. Colvin*, No. 1:15-cv-00191-SB, 2016 WL 917313, at *8 n.5 (D. Or. Mar. 8, 2016) ("[T]he fifth edition of the Diagnostic and Statistical Manual of Mental Disorders (issued May 27, 2013) abandoned the GAF scale in favor of standardized assessments for symptom severity, diagnostic severity, and disability.")

### 13. State Agency Evaluators and Consultants

On November 17, 2014, state agency medical consultant Rebecca Hansmann, Psy.D., found Plaintiff would have infrequent interruptions that would affect persistence and pace, could have only have superficial contact with the public and coworkers, and could adapt only to infrequent change. AR 78. She assessed mild difficulties in activities of daily living, moderate difficulty in social functioning, moderate difficulty in concentration, persistence, and pace, and no episodes of decompensation. AR 74, 76–78. She opined Plaintiff could understand and remember simple and multi-level detailed tasks but could not make independent decisions for complex tasks; he could maintain attention and concentration but would have infrequent interruptions that could affect persistence and pace; he could interact appropriately with supervisors but contact with the public and coworkers should be superficial; and he could adapt to infrequent change and set goals. AR 74, 76–78.

On February 17, 2015, State agency physician S. Amon, M.D., also reviewed the medical evidence of record and opined Plaintiff was capable of light work and he could sit, stand, and/or walk about six hours in an eight-hour workday; frequently balance, stoop, and crouch; and occasionally kneel, crawl, and climb ramps, stairs, ladders, ropes, or scaffolds. AR 75–76.

On May 19, 2015, D. Haaland, M.D., opined Plaintiff was capable of light work and he could sit, stand, and/or walk about six hours in an eight-hour workday; had no balance restrictions; could occasionally stoop, and crouch; and could occasionally kneel, crawl, and climb ramps, stairs, ladders, ropes, or scaffolds. AR 93–94.

On August 10, 2015, L. Colsky, M.D., found Plaintiff capable of performing light work with moderate limitations in the following areas: maintain attention and concentration, perform activities within a schedule, maintain attendance, be punctual, complete a normal workday or workweek without an unreasonable number and length of rest periods, interact appropriately with general public, get along with co-workers, and respond appropriately to changes in the work setting. AR 95-96.

On August 11, 2015, C. Parkhurst used Dr. Haaland's and Dr. Hansmann's two RFCs to conclude Plaintiff was nondisabled because there is work he can do. AR 97-99. Dr. Parkhurst

wrote that Plaintiff is limited to unskilled work because of impairments. AR 97. Further, Dr. Parkhurst noted Plaintiff demonstrated maximum sustained work capability for light work. *Id.* The final finding was that Plaintiff was not disabled. *Id.*

## C.    Plaintiff's Report to the Agency

In his Form SSA-3368 Disability Report dated October 3, 2014, Plaintiff alleged disability based on anxiety/panic disorder, depression, chronic lower back pain, sleep apnea, chronic fatigue, temporomandibular disorder, chronic protatitus, and acid reflux. AR 214. He wrote that he rarely leaves home. AR 225. He noted that he has trouble completing tasks and maintaining attendance and that he had limitations in lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, and concentrating. AR 229. Plaintiff further stated that he had no problems following a television show or instructions; he could prepare simple meals, drive occasionally, and do his own laundry; had no problem with any task of personal care, including bathing, dressing, caring for his hair, shaving, feeding himself, or toileting; he cleaned a birdbath, took out the garbage, managed his own finances, played video games, and used e-mail. AR 225–28.

## III.    SOCIAL SECURITY ADMINISTRATION PROCEEDINGS

On August 6, 2014, Plaintiff filed a claim for Disability Insurance Benefits, alleging disability beginning on August 7, 2012. AR 67. On February 18, 2015, the SSA denied Plaintiff's claim, finding he did not qualify for disability benefits. AR 104. Plaintiff subsequently filed a request for reconsideration, which was denied on August 11, 2015. AR 110. On November 4, 2015, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 116. ALJ Kevin Gill conducted a hearing on March 12, 2017. AR 34. Plaintiff testified in person at the hearing and was represented by counsel Katherine Siegfried. *Id.* The ALJ also heard testimony from Vocational Expert Suyi Komrav. *Id.* The ALJ also heard testimony from Plaintiff's mother, Ms. Price. *Id.*

## A.    Plaintiff's Testimony

At the hearing, Plaintiff testified that he drives only "very seldom," and approximately three miles, because he has anxiety and panic attacks, severe fatigue and feels spacey a lot. AR 40. He testified that he started experiencing psychological symptoms in high school and attended

11

"only part of 10th grade." AR 40, 50. He testified that he cannot work because of his anxiety, panic attacks, depression, extreme fatigue from sleep apnea, and chronic pain in his jaw and back. AR 42. Plaintiff last worked as a meat department employee at a supermarket in August 2012, where he worked for about twenty years. AR 41. He has never worked a full-time job. AR 51. He mostly worked evenings and would take unscheduled, sudden breaks because of his panic attacks. *Id*. His employer would tell him he "didn't get enough done a lot of times." AR 52. Plaintiff testified that his fatigue and anxiety would cause him to call in sick. AR 53. He believes he was not fired because he was a union employee and had some nice managers who tolerated his conditions. *Id*. Plaintiff testified that he received verbal and written warnings and was eventually suspended and then fired. *Id*.

Since he stopped working, he has "eliminated as much stress" and functions as well as he does because he mostly stays at home. AR 52. He does not get full blown panic attacks if he does not go out. AR 46. He only leaves the house to attend doctors' appointments or special events. AR 48. He testified that he does not particularly have problems understanding information or instructions. AR 46. He gets along with people. *Id*. Plaintiff testified that his anxiety along with sleep apnea prevents him from sleeping and his fatigue would cause him to miss multiple days of work in a month. AR 47, 54. His fatigue causes him to feel spacey, forget what he is doing, and his attention and concentration are "kind of rough." AR 45. He has tried a CPAP machine, was evaluated for surgery, and was fitted for a dental advice to treat his sleep apnea but none were successful. AR 54. Plaintiff gets ringing in his ears, aching in his jaw and vertigo from TMJ. AR 42. He has tried specialized treatments for the TMJ, but they have all been unsuccessful. AR 55. The TMJ by itself is not debilitating but it "enhances" his other conditions. AR 56. He injured his back at work, had difficulty lifting items and would be in pain after work. AR 43. Since he stopped work, his back pain lessened if he did not irritate it. *Id*. If he stands for half an hour to an hour or sits for a half hour to an hour, his back pain becomes exacerbated. AR 44.

**B.    Testimony of Diana Price, Plaintiff's Mother**

Plaintiff's mother testified at the hearing as well. She testified that she sees Plaintiff every day and they live together. AR 57. She noted that his mental health deteriorated over the past

three years. *Id.* According to her, she can tell when he's anxious or having a panic attack because his facial expression changes, he paces, and he appears nervous. *Id.* He gets anxious a couple of times a month, whenever he must do something big or when he was working. AR 58. She further testified that Plaintiff stays home all the time. *Id.* He can perform tasks in their home but panics and has anxiety when he's outside the house. AR 59. He usually only leaves the house with her. AR 58. He was unable to maintain a work schedule and missed a lot of days of work. AR 59-60. He would miss days because just knowing he had to be somewhere would increase his anxiety, depression and difficulty sleeping. AR 60. Toward the end of his work in 2012 he had to call in almost every day. *Id.*

**C.      Vocational Expert's Testimony**

The vocational expert testified that Plaintiff's only prior relevant work was as a Meat Clerk (DOT Code 222.648-010).[3] AR 62. The expert testified that a hypothetical individual with the claimant's age, education, and past job would be limited to essentially light work (lifting/carrying up to 20 lbs. occasionally, sitting/standing/walking for up to six hours) with only simple and detailed but non-complex tasks and only occasional interaction with co-workers and the public could perform work as a mail clerk, office helper or photocopying machine operator. AR 63. Further, the expert testified that if a person were absent twice a month he could not sustain work. AR 63-64. If a person were off task, unable to maintain a schedule, not punctual, took an unreasonable number of breaks and were unable to interact appropriately with coworkers for fifteen percent of the time, he would be unable to maintain work. AR 64-65.

**D.      ALJ's Decision and Plaintiff's Appeal**

On May 23, 2017, the ALJ issued an unfavorable decision finding Plaintiff was not disabled. AR 15-29. This decision became final when the Appeals Council declined to review it

---

[3] The Dictionary of Occupational Titles ("DOT") by the United States Department of Labor, Employment & Training Administration, may be relied upon "in evaluating whether the claimant is able to perform work in the national economy." *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990). The DOT classifies jobs by their exertional and skill requirements, and may be a primary source of information for the ALJ or Commissioner. 20 C.F.R. § 404.1566(d) (1). The "best source for how a job is generally performed is usually the Dictionary of Occupational Titles." *Pinto v. Massanari*, 249 F.3d 840, 846 (9th Cir. 2001).

on April 26, 2018. AR 1. Having exhausted all administrative remedies, Plaintiff commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). On October 18, 2018, Plaintiff filed the present Motion for Summary Judgment. On November 15, 2018, Defendant filed a Cross-Motion for Summary Judgment.

## IV. STANDARD OF REVIEW

This Court has jurisdiction to review final decisions of the Commissioner pursuant to 42 U.S.C. § 405(g). An ALJ's decision to deny benefits must be set aside only when it is "based on legal error or not supported by substantial evidence in the record." *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017) (citation and quotation marks omitted). "Substantial evidence means more than a mere scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation and quotation marks omitted). The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.* at 675 (citation and quotation marks omitted). However, "[w]here evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Id.* (citation and quotation marks omitted). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014) (citation and quotation marks omitted).

Additionally, the harmless error rule applies where substantial evidence otherwise supports the ALJ's decision. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). "[A]n error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error does not negate the validity of the ALJ's ultimate conclusion." *Id.* (citation and quotation marks omitted). A court may not reverse an ALJ's decision because of a harmless error. *Id.* at 1111 (citation omitted). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Id.* (citation and quotation marks omitted).

# V.    DISCUSSION

## A.    Framework for Determining Whether a Claimant Is Disabled

The regulations promulgated by the Commissioner of Social Security provide for a five-step sequential analysis to determine whether a Social Security claimant is disabled.[4]  20 C.F.R. § 404.1520.  The sequential inquiry is terminated when "a question is answered affirmatively or negatively in such a way that a decision can be made that a claimant is or is not disabled."  *Pitzer v. Sullivan*, 908 F.2d 502, 504 (9th Cir. 1990).  During the first four steps of this sequential inquiry, the claimant bears the burden of proof to demonstrate disability.  *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).  At step five, the burden shifts to the Commissioner "to show that the claimant can do other kinds of work."  *Id.* (quoting *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)).

The ALJ must first determine whether the claimant is performing "substantial gainful activity," which would mandate that the claimant be found not disabled regardless of medical condition, age, education, and work experience.  20 C.F.R. § 404.1520(a)(4)(i), (b).  Here, the ALJ determined Plaintiff had not performed substantial gainful activity since August 7, 2012, the alleged disability onset date.  AR 17.

At step two, the ALJ must determine, based on medical findings, whether the claimant has a "severe" impairment or combination of impairments as defined by the Social Security Act.  20 C.F.R. § 404.1520(a)(4)(ii).  If no severe impairment is found, the claimant is not disabled.  20 C.F.R. § 404.1520(c).  Here, the ALJ determined Plaintiff had the following severe impairments: anxiety, depression, obesity, obstructive sleep apnea, and degenerative disc disease.  AR 17.

If the ALJ determines that the claimant has a severe impairment, the process proceeds to the third step, where the ALJ must determine whether the claimant has an impairment or combination of impairments that meet or equals an impairment listed in 20 C.F.R. Part 404, Subpt. P, App. 1 (the "Listing of Impairments").  20 C.F.R. § 404.1520(a)(4)(iii).  If a claimant's

---

[4] Disability is "the inability to engage in any substantial gainful activity" because of a medical impairment which can result in death or "which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

impairment either meets the listed criteria for the diagnosis or is medically equivalent to the criteria of the diagnosis, he is conclusively presumed to be disabled, without considering age, education and work experience. 20 C.F.R. § 404.1520(d). Here, the ALJ determined Plaintiff did not have an impairment or combination of impairments that meets the listings. AR 18.

Before proceeding to step four, the ALJ must determine the claimant's Residual Function Capacity ("RFC"). 20 C.F.R. § 404.1520(e). RFC refers to what an individual can do in a work setting, despite mental or physical limitations caused by impairments or related symptoms. 20 C.F.R. § 404.1545(a)(1). In assessing an individual's RFC, the ALJ must consider all the claimant's medically determinable impairments, including the medically determinable impairments that are nonsevere. 20 C.F.R. § 404.1545(e). Here, the ALJ determined Plaintiff has the RFC to perform light work, except he can lift and carry 20 pounds occasionally and 10 pounds frequently; he can sit, stand, and/or walk for six hours of an eight-hour day; he can occasionally kneel, crawl, and climb ramps, stairs, ladders, ropes, or scaffolds; he can frequently balance, stoop, and crouch; he is limited to simple and detailed, but not complex tasks; and he can occasionally interact with coworkers and the public. AR 20.

The fourth step of the evaluation process requires that the ALJ determine whether the claimant's RFC is enough to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv); 404.1520(f). Past relevant work is work performed within the past 15 years that was substantial gainful activity, and that lasted long enough for the claimant to learn to do it. 20 C.F.R. § 404.1560(b)(1). If the claimant has the RFC to do his past relevant work, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4) (iv). Here, the ALJ determined Plaintiff could not perform past relevant work. AR 27.

In the fifth step of the analysis, the burden shifts to the Commissioner to prove that there are other jobs existing in significant numbers in the national economy which the claimant can perform consistent with the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g); 404.1560(c). The Commissioner can meet this burden by relying on the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, Subpt. P, App. 2. *Lounsbury v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006). Here, the ALJ

found that Plaintiff could perform work existing in significant numbers in the national economy such as a mail clerk, office helper, and photocopy machine operator.  AR 28.

**B.      Plaintiff's Arguments**

Plaintiff raises five arguments in support of his motion: (1) the ALJ erred in his Step Two analysis when he did not find that Plaintiff's agoraphobia was a medically verified condition supported by substantial evidence that created more than minimal limitations in his work related functioning; (2) the ALJ failed to provide clear and convincing reasons or to consider the entire case record in finding that Mr. Pellegrini's testimony about the severity and frequency of his symptoms was not credible; (3) the ALJ failed to provide a valid justification for not giving any weight to the third party statements of Ms. Price, Plaintiff's mother; (4) the ALJ erred by failing to give weight Dr. Palmer's opinion and by failing to incorporate the entire opinions of reviewing experts without providing legitimate reasons supported by substantial evidence, despite giving those opinions "great weight"; and (5) the ALJ's finding that Mr. Pellegrini was capable of performing the ALJ's given RFC was unsupported by substantial evidence.

**C.      Did the ALJ Err in His Step Two Analysis?**

Plaintiff argues that the ALJ erred in his Step Two analysis when he did not find that Plaintiff's agoraphobia was a medically verified condition supported by substantial evidence that created more than minimal limitations in his work-related functioning.  Pl.'s Mot. at 6.

However, the Court cannot tell what the ALJ did on this issue because his decision contains no discussion of Plaintiff's claimed agoraphobia.  Drs. Alpert and Palmer diagnosed Plaintiff with agoraphobia.  Dr. Palmer diagnosed the condition as being particularly severe in the 2015-17 time period.  Further, both Plaintiff and his mother gave extensive testimony concerning Plaintiff's agoraphobia that was fully consistent with Dr. Palmer's testimony.  Yet the ALJ's decision has no discussion of the issue.

The ALJ did consider other aspects of Plaintiff's claimed mental limitations and determined that his testimony was inconsistent with his own prior self-assessments and with the results of his examinations.  AR 24.  But that related to his level of anxiety, and not specifically his agoraphobia.  The medical opinion evidence the ALJ relied on in discounting Plaintiff's

testimony, *see* AR 24-25, also did not discuss his agoraphobia.  Likewise, the ALJ discounted his mother's testimony "that the claimant suffered from anxiety and depression," AR 25, stating that it was inconsistent with the objective medical evidence and medical opinions of record, AR 26, but those opinions were about anxiety and depression, not agoraphobia.  To be clear, Plaintiff's testimony (and his mother's testimony) was that he almost never left the house except to go to medical appointments or family events.  He further testified that not leaving the house most days was one of his primary means of avoiding severe anxiety.  A medical evaluation that he had cooperative behavior, made eye contact, and was not homicidal, AR 24, just doesn't speak to whether leaving the house every day to go to a job would give him panic attacks.

At a minimum, the ALJ erred at Step Two by failing to analyze whether Plaintiff's agoraphobia was severe.  Step Two errors concerning the severity of an impairment can be harmless if the ALJ (as he is supposed to) takes into account the non-severe impairments in determining RFC.  *See Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017).  But that didn't happen here because nothing in the RFC determination reflected Plaintiff's tendency to get panic attacks *when he leaves his home*, which he would have to do to go to work.  The ALJ stated that the Plaintiff has the RFC to perform light work except that he can't lift heavy things, is limited to simple tasks, and can have only occasional interactions with coworkers and the public.  None of those limitations in any way takes into account his claimed agoraphobia.  In sum, the ALJ ignored the evidence of Plaintiff's agoraphobia at Step Two and then never considered the impairment at any further stage of the analysis.  This was error, and it was not harmless.

**D.     Did the ALJ Err in His Assessment of Plaintiff's Credibility?**

Plaintiff argues that the ALJ failed to provide clear and convincing reasons or to consider the entire case record in finding that his testimony about the severity and frequency of his symptoms was not credible.  Pl.'s Mot. at 6.  Defendant argues that the ALJ properly articulated his assessment of Plaintiff's subjective claims by detailing Plaintiff's pertinent allegations, setting forth specific and legitimate reasons explaining how he weighed the allegations, and identifying substantial evidence in the record supporting his findings.  Def.'s Mot. at 2.  While the ALJ accepted Plaintiff's claims of anxiety and depression-related symptoms he concluded that the

medical evidence showed that even with these symptoms, Plaintiff retained a level of mental functioning sufficient to perform the narrow range of unskilled work delineated in his RFC. Def.'s Mot. at 2 (citing AR 19, 21, 23–24, 323, 334, 438). The Court has already found that the ALJ failed to consider Plaintiff's agoraphobia. However, with respect to Plaintiff's anxiety and depression (aside from his anxiety related to his agoraphobia), the Court agrees with the Defendant.

### 1. Legal Standard

Congress expressly prohibited granting disability benefits based solely on a claimant's subjective complaints. *See* 42 U.S.C. § 423(d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability"); 20 C.F.R. § 416.929(a) (an ALJ will consider all of a claimant's statements about symptoms, including pain, but statements about pain or other symptoms "will not alone establish" the claimant's disability). "An ALJ cannot be required to believe every allegation of [disability], or else disability benefits would be available for the asking, a result plainly contrary to [the Social Security Act]." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). An ALJ is, however, required to make specific credibility findings. *See* SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996) (the credibility finding "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight").

A two-step analysis is used when determining whether a claimant's testimony regarding his subjective pain or symptoms is credible. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, it must be determined "whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc); 42 U.S.C. § 423(d)(5)(A)). A claimant does not need to "show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)).

Second, if the claimant has met the first step and "there is no evidence of malingering, 'the

United States District Court
Northern District of California

ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Id.* (quoting *Smolen*, 80 F.3d at 1281). "The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284. Courts must not engage in second-guessing where the ALJ "has made specific findings justifying a decision to disbelieve an allegation of excess pain, and those findings are supported by substantial evidence in the record." *Fair*, 885 F.2d at 604. However, "a finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (citing *Lester*, 81 F.3d at 834).

Factors an ALJ may consider in weighing a claimant's credibility include: "[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [his] testimony and [his] conduct, claimant's daily activities, [his] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002) (quoting *Light*, 119 F.3d at 792). An ALJ's credibility finding must be properly supported by the record, and sufficiently specific to ensure a reviewing court he did not "arbitrarily discredit" a claimant's subjective testimony. *Id.* at 958 (citing *Bunnell*, 947 F.2d at 345-46).

### 2. Analysis

Aside from Plaintiff's claimed agoraphobia, which the ALJ did not specifically discuss, the ALJ reasonably determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. For example, while Plaintiff alleged memory deficits, his mental-status examinations revealed fully intact memory. AR 19, 21, 23–24, 45, 323 (intact recall, short- term memory, and long-term memory), 334 (same), 438 (same). Similarly, while Plaintiff testified that he missed significant amounts of work due to fatigue, the ALJ noted that he presented as alert and oriented and had goal-directed thinking. AR 22-23. Further, in March of 2014, Plaintiff told Dr. Palmer he could not work due to anxiety but "mostly due to physical illness." AR 23.

The ALJ properly found the medical evidence did not corroborate the disabling degree of

20

limitations Plaintiff alleged, and he stated specifically which symptom testimony was not credible and what facts in the record led to that conclusion. AR 20-24; *Smolen*, 80 F.3d at 1284 ("the ALJ may reject the claimant's testimony regarding the severity of her symptoms only if he makes specific findings stating clear and convincing reasons for doing so.") (citing *Dodrill v. Shalala,* 12 F.3d 915, 918 (9th Cir.1993).

Furthermore, treatment notes pertaining to Plaintiff's medical improvement undercut his credibility. Overall, Plaintiff's treatment records established he began reporting improvement in or around October of 2012 and experienced "a lot" of improvement and "controlled" symptoms by May of 2013. AR 22-23; *see* 20 C.F.R. § 404.1529(c)(3)(iv); *see also* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (requiring, in pertinent part, that a claimant prove he has a disabling impairment that can "be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"). On December 3, 2012, he noted "[s]light improvement" and that he was only using his anti-anxiety medication "sparingly." AR 366. On May 1, 2013, he told treating physician Dr. Aguirre "his anxiety and depression has improved a lot." AR 23, 373. In discussing her impression and treatment plan, Dr. Aguirre stated that Plaintiff's anxiety and depression were "managed by [a] psychiatrist" and seemed "well controlled." AR 375. While Plaintiff argues that the efficacy of treatment was not relevant, the efficacy of treatment undermines a claimant's allegations of disabling symptoms and limitations. *See* 20 C.F.R. § 404.1529(c)(3)(iv); *see, e.g., Celaya v. Halter,* 332 F.3d 1177, 1180 (9th Cir. 2003); *Huizar v. Comm'r of Soc. Sec.,* 428 Fed. App'x. 678, 680 (9th Cir. 2011) (unpublished). Accordingly, the ALJ did not err in his assessment of Plaintiff's credibility.

**E.      Did the ALJ Err in Affording Little Weight to Ms. Price's Testimony?**

Plaintiff also argues the ALJ failed to provide a valid justification for not giving any weight to the statements of Plaintiff's mother, Ms. Price, who provided her first-hand observations. Pl.'s Mot. at. 16. Defendant argues that the ALJ discussed Ms. Price's testimony and properly rejected it as it was duplicative of Plaintiff's testimony; thus, the ALJ's reasoning as to Plaintiff's testimony applies with equal force to Ms. Price's. Def.'s Mot. at 6.

### 1.    Legal Standard

Lay testimony as to a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence that the ALJ must consider.  *Nguyen v. Chater,* 100 F.3d 1462, 1467 (9th Cir. 1996).  Competent lay witness testimony "*cannot* be disregarded without comment," *id.* (emphasis added), and in order to discount competent lay witness testimony, the ALJ "must give reasons that are germane to each witness," *Dodrill,* 12 F.3d at 919.

### 2.    Analysis

In this instance, the ALJ provided germane reasons for affording little weight to Mr. Price's testimony.  Her testimony was largely duplicative of Plaintiff's.  Accordingly, the ALJ's conclusion that his testimony was contradicted by the medical evidence and medical opinions also supports the same determination as to Ms. Price's testimony.  If the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness.  *See Valentine v. Comm'r of Soc. Sec. Admin.,* 574 F.3d 685, 694 (9th Cir. 2009) (holding that because "the ALJ provided clear and convincing reasons for rejecting [the claimant's] own subjective complaints, and because [the lay witness's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting [the lay witness's] testimony").  Accordingly, the ALJ provided sufficient reasons for affording little weight to Ms. Price's testimony.

### F.    Did the ALJ Err in His Assessment of The Weight to Be Given to The Opinions and Findings of The Various Medical Sources?[5]

Plaintiff argues the ALJ committed error by failing to give weight to treating psychiatrist Dr. Palmer and by failing to incorporate the entire opinion of reviewing experts without providing legitimate reasons supported by substantial evidence, despite giving those opinions "great weight."  Pl.'s Mot. at 6.  Defendants argue that the Plaintiff does not identify a concrete functional limitation from Dr. Palmer's examination that the ALJ should have included in his RFC.  Def.'s

---

[5] Rules regarding the evaluation of medical opinion evidence were recently updated, but the updates were made effective only for claims filed on or after March 27, 2017.  *See* 82 Fed. Reg. 5844 (Jan. 18, 2017).  As Plaintiff's claim was filed before 2017, the Court evaluates the medical opinion evidence in his case under the older framework as set forth in 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) and in Social Security Ruling 96-2p.

Mot. at 8.

## 1. Legal Standard

When determining whether a claimant is disabled, the ALJ must consider each medical opinion in the record together with the rest of the relevant evidence. 20 C.F.R. § 416.927(b); *King v. Berryhill*, 2018 WL 4586726, at *11 (N.D. Cal. Sept. 25, 2018). In deciding how much weight to give to any medical opinion, the ALJ considers the extent to which the medical source presents relevant evidence to support the opinion. 20 C.F.R. § 416.927(c)(3). Generally, more weight will be given to an opinion that is supported by medical signs and laboratory findings, and the degree to which the opinion provides supporting explanations and is consistent with the record as a whole. 20 C.F.R. § 416.927(c)(3)-(4).

In conjunction with the relevant regulations, the Ninth Circuit "developed standards that guide [the] analysis of an ALJ's weighing of medical evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527). Courts "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "By rule, the Social Security Administration [SSA] favors the opinion of a treating physician over non-treating physicians." *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) (citing 20 C.F.R. § 404.1527). If a claimant has a treatment relationship with a provider, and clinical evidence supports that provider's opinion and is consistent with the record, the provider will be given controlling weight. 20 C.F.R. § 416.927(c)(2). "The opinion of a treating physician is given deference because 'he is employed to cure and has a greater opportunity to know and observe the patient as an individual.'" *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987)).

"If a treating physician's opinion is not given 'controlling weight' because it is not 'well-supported' or because it is inconsistent with other substantial evidence in the record, the [SSA] considers specified factors in determining the weight it will be given." *Orn*, 495 F.3d at 631. "Those factors include the '[l]ength of the treatment relationship and the frequency of

examination' by the treating physician; and the 'nature and extent of the treatment relationship' between the patient and the treating physician." *Id.* (citing 20 C.F.R. § 404.1527(d)(2)(i)-(ii)).

> Additional factors relevant to evaluating any medical opinion, not limited to the opinion of the treating physician, include the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; the specialty of the physician providing the opinion; and "[o]ther factors" such as the degree of understanding a physician has of the [Social Security] Administration's "disability programs and their evidentiary requirements" and the degree of his or her familiarity with other information in the case record.

*Id.* (citing 20 C.F.R. § 404.1527(d)(3)-(6)). Nonetheless, even if the treating physician's opinion is not entitled to controlling weight, it is still entitled to deference. *See id.* at 632 (citing SSR 96-2p, 1996 WL 374188, at *4 (July 2, 1996)).[6] "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." SSR 96-2p at *4.

### 2. Analysis

With respect to Dr. Palmer – the treating psychiatrist – the Court's task is to determine whether the ALJ provided "specific and legitimate reasons that are supported by substantial evidence" for rejecting the treating physician's opinions. *See Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (citation and quotation marks omitted). The answer is no. The ALJ failed to provide *any* reasons for not giving weight to Dr. Palmer's opinions, and this was prejudicial error. *See Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014); *Marsh v. Colvin,* 792 F.3d 1170, 1172 (9th Cir. 2015).

Plaintiff was seen by Dr. Palmer for a period of five years. However, aside from a brief reference to a GAF score of 56 that Dr. Palmer assessed in October 2012 (AR 25), the only reference the ALJ made to that five-year period of treatment by Dr. Palmer was:

> In March 2014, the claimant told his treating psychiatrist, Ralph Palmer, M.D. that he got his job back, then resigned. (Ex. 11F/1). He

---

[6] "[Social Security Rulings] do not carry the force of law, but they are binding on ALJs nonetheless." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009); *see* 20 C.F.R. § 402.35(b)(1). The Ninth Circuit defers to the rulings unless they are "plainly erroneous or inconsistent with the Act or regulations." *Chavez v. Dep't of Health and Human Serv.*, 103 F.3d 849, 851 (9th Cir. 1996).

> also told Dr. Palmer that he could not work due to anxiety, but mostly due to "physical illness". Later in 2014, notes show that the claimant did not comply with a medication change or complete disability paperwork. Dr. Palmer described the claimant as 'non-compliant'.

AR 23. The ALJ largely ignored the two years prior to March 2014 and seems to have completely ignored the three years after March 2014 when Dr. Palmer treated Plaintiff. He did not articulate specific and legitimate reasons for rejecting Dr. Palmer's opinions. Moreover, while the ALJ assigned "great weight" to reviewing physicians retained by the Commissioner at the reconsideration level, the ALJ did not cite those opinions as bases for rejecting Plaintiff's treating psychiatrist's opinions that Plaintiff suffered from mental impairments. He did assign great weight to the GAF score of 56 assessed by Dr. Palmer in October 2012 but did not provide reasons for rejecting the bulk of Dr. Palmer's opinions.

Defendant argues that any error in ignoring Dr. Palmer's opinions was harmless because Plaintiff does not identify any specific functional limitations that should have been included in the RFC determination based on Dr. Palmer's opinions. In tension with that argument, however, Defendant also argues that the ALJ was not required to accept Dr. Palmer's opinion that Plaintiff was unable to work because employability is a legal conclusion reserved to the Commissioner. Regardless, the RFC determination is for the ALJ to make in the first instance, and the ALJ's failure to discuss Dr. Palmer's opinions or provide specific and legitimate reasons for rejecting them means the Court does not know if the ALJ would have changed the functional limitations in the RFC determination if he had taken Dr. Palmer's opinions into account.

Plaintiff also argues Dr. Martin's testing did not support his assessment of Plaintiff's attention, concentration, and processing speed. However, Dr. Martin's examination and evaluation yielded various findings supporting his assessment of only mild-to-moderate limitations including, but not limited to: fair attention; adequate fund of knowledge; adequate memory; intact calculation and abstraction; adequate insight and judgment; organized, coherent, linear and goal-directed thought processes; and normal thought content. AR 23, 438. Plaintiff's argument that Dr. Martin's findings did not support Dr. Martin's opinion is unpersuasive.

Contrary to Plaintiff's contention, the ALJ adequately accounted for Dr. Martin, Dr.

Hansmann, and Dr. Colsky's opinions in his RFC determination, including their assessments of moderate limitations in completing a normal workday or workweek without interruptions resulting from his psychiatric condition, dealing with usual workplace stressors, and interacting with others. AR 20-24. As a threshold matter, these are not "concrete restrictions." *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). For example, Dr. Martin found Plaintiff could perform simple and repetitive tasks and was not significantly limited in his ability to interact with coworkers and the public. The ALJ explicitly confirmed that, "[t]he limitations assessed by Dr. Martin are fully addressed in the above residual functional capacity." AR 24.

The ALJ properly captured the weight of the evidence in Plaintiff's RFC for simple and detailed, but not complex, tasks and occasional interaction with coworkers and the public. AR 20; *see Stubbs-Danielson*, 539 F.3d at 1174 ("The ALJ translated Stubbs-Danielson's condition, including the pace and mental limitations, into the only concrete restrictions available to him . . . . simple tasks"); *Keller v. Colvin*, 2014 WL 130493, *3 (E.D. Cal. Jan. 13, 2014) (explaining RFC for simple, repetitive tasks accounted for limitations handling stress) (citing *Vezina Barnhart,* 70 Fed. App'x 932 (9th Cr. 2003) (vocational expert identified simple, repetitive, unskilled tasks as addressing limitation to low-stress work)).

Plaintiff's argument that his RFC for occasional contact with coworkers and the public did not account for Dr. Hansmann's opinion is also unconvincing because Dr. Hansmann specifically noted that "claimant has the ability to interact appropriately with supervisors; contact with the general public & co-workers should be superficial." AR 78. The unskilled simple work described in Plaintiff's RFC requires "little to no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a). Further, unskilled work generally "does not require working with people." *See Keller*, 2014 WL 130493, at *3 n.3 (noting unskilled work "does not require working with people"), (citing 20 C.F.R., Pt. 404, Subpt. P, App. 2, Rules 201.00(I), 202.00(g); Social Security Ruling 85-15). Except for the ALJ's failure to provide specific and legitimate reasons for rejecting Dr. Palmer's opinions, Plaintiff fails to demonstrate reversible error in the ALJ's weighing of the medical-opinion evidence.

## G. Did the ALJ Err in Finding Substantial Evidence Supported His Conclusion That Plaintiff Was Capable of Maintaining Substantial Gainful employment?

Last, Plaintiff argues that the finding that he was capable of performing the ALJ's determined RFC and could perform work as a mail clerk, photocopy machine operator and office helper was unsupported by substantial evidence because the hypothetical to the vocational expert was incomplete. Pl.'s Mot. at 22. Defendant argues that the ALJ's hypothetical question to the vocational expert accurately and completely captured the ALJ's RFC finding. Def.'s Mot at 10.

As noted above, RFC is the most a claimant can do despite his limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed by considering all the relevant evidence in a claimant's case record. *Id.* When a case is before an ALJ, it is the ALJ's responsibility to assess a claimant's RFC. 20 C.F.R. § 404.1546(c); *see also Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity.").

The Court has concluded that the ALJ erred at Step Two by not determining whether Plaintiff had severe agoraphobia and that this error was not harmless because the ALJ's RFC determination did not include functional limitations that addressed agoraphobia. The Court has also determined that the ALJ committed prejudicial error by not giving specific and legitimate reasons for rejecting Dr. Palmer's opinions. These errors require a remand. On remand, the ALJ will need to address these issues and then determine whether the hypothetical posed to the vocational expert was incomplete and whether another hypothetical needs to be posed instead.

## VI. CONCLUSION

"Remand for further proceedings is appropriate where there are outstanding issues that must be resolved before a disability determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated." *Taylor v. Comm'r of Soc. Sec.*, 659 F.3d 1228, 1235 (9th Cir. 2011) (reversing and remanding for the consideration of new evidence instead of awarding benefits). The Court concludes this case should be remanded for further administrative proceedings for the reasons stated above. *See Harman v. Apfel*, 211 F.3d 1172, 1181 (9th Cir. 2000) ("Because neither the ALJ nor the vocational expert had the full picture before them, remand for further proceedings is

particularly appropriate.").

Accordingly, the Court **GRANTS IN PART** Plaintiff's Motion for Summary Judgment,
**DENIES** Defendant's Cross-Motion for Summary Judgment, and **REMANDS** this case for
further proceedings.

**IT IS SO ORDERED.**


Dated: June 11, 2019

THOMAS S. HIXSON
United States Magistrate Judge